IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAULA M. DONALDS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-20-1659 |
| ETHICON, INC., et al., | * | |
| Defendants. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Paula M. Donalds' Motion for Reconsideration (ECF No. 71). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will deny the Motion.

## I.   BACKGROUND

### A.   Factual Background

The relevant facts underlying Donalds' claims are set forth in detail in the Memorandum Opinion supporting the Court's grant of judgment on behalf of Defendants Ethicon, Inc. and Johnson & Johnson ("Ethicon"). (ECF No. 69). In brief, on July 17, 2014, Donalds underwent surgery to treat her urinary incontinence. (Medical Rs. ["Med. Rs."] at 9,[1] ECF No. 63-2). Dr. Christine O'Connor implanted her with a TVT Abbrevo device, a mesh product produced by Ethicon. (Id.). Donalds alleges that she suffered from ongoing

---

[1] Citations to exhibit page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

symptoms as a result of complications tied to the TVT Abbrevo. (Paula Donalds Dep. ["Donalds Dep."] at 18:2–17, 20:20–22, 21:17–23, 22:2–10, ECF No. 63-1). On July 25, 2016, Dr. Richard Ellerkmann surgically removed eroded portions of the TVT-Abbrevo. (Id. at 21:11–20; July 25, 2016 Operative Report at 1, ECF No. 64-1). On October 3, 2016, Ellerkmann implanted Donalds with a different mesh device also produced by Ethicon, the TVT Exact, to treat her "[r]ecurrent stress incontinence" and pain. (Oct. 3, 2016 Operative Report at 1, ECF No. 64-2). Donalds complained of complications connected to the TVT Abbrevo only. (See Donalds Dep. at 13:14–21).

Donalds produced a two-page expert report by Dr. Richard Luciani during discovery causally connecting the TVT Abbrevo to her injuries. (Richard L. Luciani, M.D. Expert Report ["Luciani Rep."] at 1–2, ECF No. 64-7). In her expert designations dated June 4, 2018, Donalds indicated that Luciani was expected to testify at trial to "causation and damages." (Pl.'s Rule 26(a)(2) Disclosures at 2, ECF No. 71-1). Donalds also designated Ellerkmann as a treating physician expected to testify "to his care and treatment of the Plaintiff." (Id.). Donalds submitted a supplemental affidavit by Luciani dated November 29, 2021 with her Opposition to Ethicon's Motion for Summary Judgment. (Aff. Richard L. Luciani, M.D. ["Luciani Aff."] at 1–2, ECF No. 67-1).

**B.    Procedural History**

On April 3, 2017, Donalds filed suit in the ongoing multi-district litigation before the United States District Court for the Southern District of West Virginia. (ECF No. 1). In her Amended Complaint, Donalds alleged claims against Ethicon for: negligence (Count I); strict liability – manufacturing defect (Count II); strict liability – failure to warn (Count

2

III); strict liability – defective product (Count IV); strict liability – design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); negligent misrepresentation (Count IX); negligent infliction of emotional distress (Count X); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); gross negligence (Count XIV); unjust enrichment (Count XV); punitive damages (XVII); and discovery rule and tolling (Count XVIII).[2] (Am. Compl. at 4–5, ECF No. 4). The parties later stipulated to dismiss Donalds' claims for manufacturing defect under the negligence theory and strict liability (Count II; Count I, in part; Count XIV, in part), strict liability – defective product (Count IV), negligent infliction of emotional distress (Count X), and unjust enrichment (Count XV) with prejudice. (See ECF No. 59).

On June 23, 2021, Ethicon renewed its Motion for Summary Judgment filed initially in the West Virginia Court. (ECF No. 63). Donalds opposed but agreed to withdraw her standalone claims for punitive damages (Count XVII) and discovery rule and tolling (Count XVIII), and Ethicon filed a Reply. (ECF Nos. 64, 65). On November 17, 2021, the Court directed the parties to file supplemental briefing regarding the admissibility of Dr. Richard L. Luciani's expert opinion on causation. (Nov. 17, 2021 Letter Order at 1, ECF No. 66).[3] The parties filed supplemental briefs addressing the limited issue. (ECF Nos. 67, 68).

---

[2] The Amended Complaint omitted Count XVI. (See generally Am. Compl.).
[3] The Order explains that Ethicon's Motion for Summary Judgment "question[ed] the admissibility" of Luciani's opinion and asks that the parties more fully address the

On December 28, 2021, the Court granted Ethicon's Motion for Summary Judgment in full. (ECF Nos. 69, 70). On January 24, 2022, Donalds filed the subject Motion for Reconsideration of the Court's dismissal of her design defect claim only. (Mot. Recons. at 2, ECF No. 71). On January 26, 2022, Donalds supplemented her exhibits. (ECF No. 72). On February 7, 2022, Ethicon filed its Opposition. (ECF No. 73). To date, Donalds has not filed a Reply.

## II.     DISCUSSION

### A.     Standard of Review

The Federal Rules of Civil Procedure include three Rules that permit a party to move for reconsideration. Rule 54(b) governs motions to reconsider interlocutory orders. See Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1469–70 (4th Cir. 1991). Rules 59(e) and 60(b) govern motions to reconsider final judgments. Id. Rule 59(e) controls when a party files a motion to alter or amend within twenty-eight days of the final judgment. Bolden v. McCabe, Weisberg & Conway, LLC, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014); see Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 470 n.4 (4th Cir. 2011). If a party files the motion later, Rule 60(b) controls. Bolden, 2014 WL 994066, at *1 n.1.

The Court granted Ethicon's Motion for Summary Judgment on December 28, 2021. Donalds filed her Motion on January 24, 2022, within twenty-eight days of the Court's Order, so Rule 59(e) controls. Rule 59(e) authorizes a district court to alter or amend a

---

admissibility of his opinion under Federal Rule of Evidence 702. (Nov. 17, 2021 Letter Order at 1).

prior final judgment. "The district court has considerable discretion in deciding whether to modify or amend a judgment." Gagliano v. Reliance Standard Life Ins., 547 F.3d 230, 241 n.8 (4th Cir. 2008). In general, granting a motion for reconsideration "is an extraordinary remedy which should be used sparingly." Pac. Ins. v. Am. Nat'l Fire Ins., 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)). Furthermore, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" Lynn v. Monarch Recovery Mgmt., Inc., 953 F.Supp.2d 612, 620 (D.Md. 2013) (quoting Sanders v. Prince George's Pub. Sch. Sys., No. RWT-08-501, 2011 WL 4443441, at *1 (D.Md. Sept. 21, 2011)). The Fourth Circuit has explained further that a litigant may not "raise arguments which could have been raised prior to the issuance of the judgment," or "argue a case under a novel legal theory that the party had the ability to address in the first instance." Kelly v. Simpson, No. RDB-16-4067, 2017 WL 4065820, at *1 (D.Md. Jan. 26, 2017) (quoting Pac. Ins., 148 F.3d at 403).

"Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." U.S. ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210–11 (4th Cir. 2017) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). With respect to the third factor, which is the only one Donalds raises in her Motion, there must be more than simply a "mere disagreement" with a decision to support a Rule 59(e) motion. Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th

Cir. 1993). "A 'factually supported and legally justified' decision does not constitute clear error." Jarvis v. Berryhill, No. TMD-15-2226, 2017 WL 467736, at *1 (D.Md Feb. 3, 2017) (quoting Hutchinson, 994 F.2d at 1081–82). As for the "manifest injustice" standard, courts focus on whether there was fairness in the administrative process or a denial of due process. Id. (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)).

**B.     Analysis**

Donalds asks the Court to reconsider its dismissal of her design defect claims.[4] First, she argues that the Court made a clear error of law that would result in manifest injustice when it excluded Luciani's causation opinions in his report and supplemental affidavit. (Mot. Recons. at 4–5). Second, she contends that the Court erred by failing to consider Ellerkmann's causation opinions.[5] The Court will address each in turn.

### 1.     Luciani's Expert Report and Supplemental Affidavit

Donalds argues that the Court should not have excluded Luciani's opinions contained in his initial report under Rule 702. At bottom, the Court disagrees and will deny the Motion.

The Court must determine the admissibility of expert evidence. As outlined in the Court's Memorandum Opinion, Rule 104(a) of the Federal Rules of Evidence provides that the Court "must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." (emphasis added). This includes expert testimony under Rule 702.

---

[4] Donalds' design defect claims formed part of her negligence claims (Count I & Count XIV) and all of her strict liability – design defect claim (Count V).

[5] The Court has reordered Donalds' arguments for clarity. (See Mot. Recons. at 4–7).

McCoy v. Biomet Orthopedics, LLC, No. ELH-12-1436, 2021 WL 252556, at *9 (D.Md. Jan. 25, 2021). Rule 702 states that an expert witness may testify if, among other things, "the testimony is the product of reliable principles and methods." See McCoy, 2021 WL 252556, at *10.

The Court's "gatekeeping role" requires it to make determinations "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." See McCoy, 2021 WL 252556, at *10 (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93, 597 (1993)). In order for evidence to be reliable, "the testimony must be grounded 'in the methods and procedures of science,' and it must be something more than subjective belief or unsupported assumptions." Id. (quoting Daubert, 509 U.S. at 589–90). Daubert provides the following, non-exhaustive factors for reviewing the reliability of an expert opinion:

> (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community.

Id. at *11 (citing Daubert, 509 U.S. at 593–94).

The Court will not "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert [where there is] simply too great an analytical gap between the data and the opinion proffered." JFJ Toys, Inc. v. Sears Holdings Corp., 237 F.Supp.3d 311, 322 (D.Md. 2017) (quoting Pugh v. Louisville Ladder, Inc., 361 F.App'x 448, 454 n.4

(4th Cir. 2010)). "Expert testimony rooted in subjective belief or unsupported speculation does not suffice." Id. (quoting Zuckerman v. Wal-Mart Stores E., LP, 611 F.App'x 138, 138 (4th Cir. 2015)).

In its Memorandum Opinion, the Court found that Luciani's report lacked a sufficient explanation of his methodology and reasoning. None of Donalds' arguments cause the Court to question that conclusion. Donalds argues that Luciani reviewed her medical records and applied his forty years of experience to reach his opinions. (Mot. Recons. at 4). She states further that his opinions "are also based on and consistent with the accepted medical literature and other experts' opinions in this case." (Id.). But Donalds is putting words in Luciani's mouth— Luciani's report does not include these details.

In his two-page report, Luciani writes that he reviewed Donalds' medical records and her deposition transcript:

> I have reviewed the medical records of Paul Donalds [sic] as it relates to the TVT ABBREVO mesh product that was vaginally implanted in her in July 2014 and subsequently removed in July 2016. These records relate to (1) the initial implant of the mesh product at Mercy Medical Center by Dr. Christine O'Connor in July 2014; (2) the revision and partial removal of the mesh product at Mercy Medical Center by Dr. Richard Ellerkmann in July 2016; and (3) the implant of her second mesh product by Dr. Ellerkmann in October 2016. I've also reviewed Ms. Donalds' deposition transcript.

(Luciani Rep. at 1). Luciani then says that he is Board certified in obstetrics and gynecology and that he is licensed to practice in New Jersey. (Id.). He further states that his CV and prior case list are attached, although Donalds did not produce those documents to the Court. (Id.). Finally, Luciani does not appear to have examined Donalds and neither party deposed

8

him. (See id.; Suppl. Opp'n Mot. Summ. J. ["Suppl. Opp'n"] at 4–5, ECF No. 67). After providing a brief overview of Donalds' surgical records, Luciani offers the following analysis, which is quoted in its entirety:

> It is my opinion to a reasonable degree of medical probability that the complications Ms. Donalds endured following implantation of the TVT ABBREVO mesh product, as described above, were proximately caused by the erosion of the mesh product. These complications include pain (during intercourse and otherwise), vaginal bleeding, bladder spasms, headaches, and urinary leakage.

(Luciani Rep. at 2).

Federal Rule of Civil Procedure 26 requires that an expert's report include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i) (emphasis added). Luciani's bare bones report does not show how or why he reached his causation opinions. Under the Rules, this omission renders his report deficient. Without information showing how Luciani applied his expertise to reach his opinions, those opinions are speculative, unreliable, and inadmissible. See JFJ Toys, Inc., 237 F.Supp.3d at 322; McCoy, 2021 WL 252556, at *11.

Further, "[i]f an 'expert' witness is relying solely or primarily on experience," which the Court presumes is the case here, "he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Mikeron, Inc. v. Exxon Co., U.S.A., 264 F.Supp.2d 268, 274 (D.Md. 2003) (citing Fed.R.Evid. 702 advisory comm. note). Indeed, the advisory committee to the Federal Rules of Evidence explained further that "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"

(Fed.R.Evid. 702 advisory comm. note). Here, Luciani provided no basis for his opinions. What he has offered—a short explanation of his qualifications and her treatment—is not enough to prove that his causation opinions are reliable. The Court will not simply take his word for it. See Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under Daubert, that's not enough."), on remand from 509 U.S. 579 (1993); see also Mikeron, 264 F.Supp.2d at 274 (finding an expert witness' opinion unreliable under 702 where he primarily relied on his experience but provided no basis for his opinion). Accordingly, Luciani's report was properly excluded as unreliable and inadmissible under Rule 702, and Donalds has not shown that reconsideration is warranted under Rule 59.

Finally, Donalds asks the Court to reconsider Luciani's late-filed affidavit to salvage his unsupported report, which the Court rejected as untimely. The affidavit, dated November 29, 2021, added the following methodology and reasoning to his report:

> 3. I am familiar with the medical literature relating to complications resulting from the implantation of vaginal mesh in women. I reviewed the expert reports prepared by Plaintiff's product experts in this case (Drs. Uwe Kling, Jerry Blaivas, and Vladimir Iakovlev), which identify various defects with the vaginal mesh product implanted in Ms. Donalds. These expert opinions are consistent with the medical literature and explain that the defective mesh causes, among other things, erosion of the mesh into the female tissue, chronic and often permanent pelvic pain and urinary problems. I have examined and treated patients in my practice who have suffered from these complications.
>
> 4. I have also reviewed Ms. Donalds' medical records . . . .

> . . . .
>
> 7. My opinion in this case, to a reasonable degree of medical probability, is that the defective mesh product implanted in Ms. Donalds eroded into her tissue, causing her pain, vaginal bleeding, bladder spasms, and urinary incontinence.
>
> . . . .
>
> 9. My opinions are based on a review of Ms. Donalds' medical records, the relevant medical literature and expert reports as well as my 40-plus years of treating women with gynecological issues. My opinions are consistent with the medical records, expert reports and my experience.
>
> 10. I considered other possible causes for Ms. Donalds' complaints of pelvic pain and other complications but dismissed other potential causes as unlikely. The airplane incident did not cause the pelvic mesh to erode into Ms. Donalds' tissue. That was caused by the defective mesh product itself. Ms. Donalds' complaints of pelvic pain pre-date the subsequent implantation of a different mesh product, and consistently existed since before implantation of the subsequent mesh product. These other "potential causes., [sic] did not likely cause the injuries complained of by Ms. Donalds in this lawsuit.

(Luciani Aff. at 1–2).

Luciani's affidavit is too little, too late. Donalds did not produce the affidavit until November 29, 2021, over three years after her Rule 26 disclosures were due. (Mem. Op. at 16, ECF No. 69). And as the Court explained in its Opinion, Rule 37(c) bars a party from using information that should have been produced under Rule 26 in support of motions or at trial. Fed.R.Civ.P. 37(c)(1).

Nonetheless, the Court informed Donalds of the Rule 37 procedural bar in its Opinion and explained that a court <u>may</u> look past a disclosure failure and admit evidence

11

if that failure "was substantially justified or is harmless." Id.; (Mem. Op. at 16). But instead of applying Rule 37, which the Court indicated to Donalds could provide an escape valve, Donalds asserts inflexibly that "[t]here was no discovery violation in this case." (Mot. Recons. at 5). She argues that because Ethicon didn't challenge Luciani's opinions as unreliable until it filed its updated Motion for Summary Judgment on June 23, 2021, "there was no reason" for her expert to supply the bases of his opinions. (Id. at 6). The Court disagrees.

First, the timing of Ethicon's reliability arguments is irrelevant to Donalds' discovery obligations. Donalds implies that she did not need to provide Luciani's reasoning until she knew that Ethicon planned to challenge his opinions. (See Mot. Recons. 5–7). That is not so. As the Plaintiff, it was Donalds' burden to prove the elements of her case. Among those elements is causation, i.e., that Ethicon's actions caused Donalds' injuries. Donalds chose to rely on an expert, Luciani, to establish this element. It was therefore Donalds' burden to ensure that Luciani's opinion was admissible. The Court is under no obligation to permit a plaintiff to generate and introduce additional evidence after a defendant has identified the flaws in her case in a motion for summary judgment, and after discovery has closed.

Next, Donalds argued in her Opposition to Ethicon's Motion for Summary Judgment that Ethicon had the option to depose Luciani "to further elucidate the completeness of his opinions and the basis for them." (Suppl. Opp'n at 4–5; Opp'n Mot. Summ. J. at 10, ECF No. 64). It is true that Ethicon, seeing the weaknesses in Luciani's report, may have made the strategic choice not to depose Luciani knowing that his opinions

12

could not stand on their own. While Donalds may not like Ethicon's litigation tactics, she had the burden to introduce evidence supporting the elements of her case at summary judgment. She failed to do so, and has presented no justification for her cries of foul play.

Accordingly, the Court will deny Donalds' Motion as to Luciani's opinions because his report was unreliable and his curative affidavit untimely.[6]

### 2. Ellerkmann's Causation Opinions

Faced with the loss of her causation expert, Donalds argues that the Court failed to consider her treating doctor's opinions on cause. (Mot. Recons. at 3–4). Donalds argues that Ellerkmann's medical records show an "obvious" causal link between her retained experts' reports and her injuries. (Id. at 4). Thus, Donalds asserts that Ellerkmann's notes, and presumably his expert testimony, are sufficient to satisfy her burden of proof on specific causation. (Id.). The Court disagrees on multiple grounds.

First, Donalds' implication that the Court overlooked Ellerkmann's medical records in its analysis is wrong. Indeed, the Court summarized Ellerkmann's records in its Memorandum Opinion. (See Mem. Op. at 2 ("During the revision procedure, Ellerkmann

---

[6] As Luciani's opinions are unreliable and subject to exclusion under Rule 702, the Court need not reach Ethicon's argument that Luciani failed to link Donalds' injuries to a specific defect in the mesh. (See Opp'n Mot. Recons. at 3, ECF No. 73). Nonetheless, it appears that the defect Luciani identified—erosion—is imprecise. None of Donalds' general experts opine that erosion itself is a defect; rather, they indicate that erosion is a complication that can arise from a myriad of design elements in the mesh. (See Rule 26 Expert Rep. Jerry G. Blaivas, M.D. at 3, 5, 10, ECF No. 64-5 (characterizing erosion as a "complication" and "risk" but not a defect); Rule 26 Expert Rep. Dr. Uwe Klinge at 2, 11, 14, ECF No. 64-4 (identifying erosion as a complication and risk); Expert Rep. Dr. Vladimir Iakovlev at 17 ("Mucosal erosion of the mesh is a complication unique for the mesh surgeries."), ECF No. 64-6).

13

identified 'two areas of discrete vaginal mesh exposure . . . .")). With that in mind, the Court can only conclude that Donalds' true complaint here is that the Court did not consider Ellerkmann as a non-retained expert witness who would testify as to specific causation. (See Mot. Recons. at 3–4 (stating that Ellerkmann was "disclosed as an expert witness who will testify that the Defendants' mesh product caused Ms. Donalds['] injury" (emphasis added))).

To the extent the Court did not analyze Ellerkmann's causation opinions, it was by Donalds' own design. Indeed, Donalds never raised Ellerkmann's supposed opinions on causation in her Opposition. (See id. at 9–12). Instead, she relied upon Luciani, arguing that his opinions were sufficient to establish causation when considered along with her other experts' opinions—specifically, those of Klinge, Blaivas, and Iakovlev. (Id. at 11). Donalds omitted Ellerkmann's opinions from her analysis entirely. (See id.).[7]

Motions for reconsideration "cannot be used to raise arguments which could, and should, have been made before [the determination to be reconsidered] issued." Bright Ideas Co. v. Target Corp., No. MJG-05-3015, 2006 WL 6903812, at *1 (D.Md. Sept. 21, 2006) (quoting Fed. Deposit Ins. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)); accord Kelly, 2017 WL 4068820, at *1. To the extent Ellerkmann formed opinions on causation—which,

---

[7] Not only did Donalds fail to raise Ellerkmann's opinions in her arguments opposing summary judgment, but she also did not include his causation opinions in the summary of her experts' opinions. Rather, Donalds stated briefly that she "also identified two of [her] treating physicians as potential expert witnesses: Christine O'Connor, M.D. and Richard Ellerkmann, M.D." (Mot. Recons. at 4–9 (emphasis added)). She did not offer any subject areas for Ellerkmann's testimony or provide a summary of his opinions in her Opposition, as she did for her other, retained expert witnesses. (See generally id.).

the Court notes, is not clear from his records—Donalds should have raised them in her Opposition. She chose not to, and the Court will not permit her to take another bite at the apple.

Even if Donalds had raised Ellerkmann's causation opinions, she faces other fatal stumbling blocks. Donalds notes in her Motion that "[b]ecause Dr. Ellerkmann was not retained specifically to provide expert testimony in this case (he was a treating physician), an expert report from him was not required by Rule 26(a)(2)." (Mot. Recons. at 3). On this, Donalds is right—Federal Rule of Civil Procedure 26(a)(2)(B) only requires written reports when an expert witness "is one retained or specially employed to provide expert testimony in the case." Ellerkmann is a treating provider and was not retained, so Donalds did not need to obtain and submit a written report regarding his opinions. Nonetheless, Donalds did not meet the disclosure requirements for hybrid fact/expert witnesses under Rule 26(a)(2)(C) and Local Rule 104.10, and thus any testimony by Ellerkmann on causation would be barred by Rule 37.

Rule 26(a)(2)(C) states:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>> (i) <u>the subject matter on which the witness is expected to present evidence</u> under Federal Rule of Evidence 702, 703, or 705; and
>> (ii) <u>a summary of the facts and opinions</u> to which the witness is expected to testify.

15

(emphasis added). The Local Rules underscore the distinctions between Rule 26(a)(2)(B) and (C) and repeat the disclosure requirements for hybrid fact/expert witnesses like Ellerkmann. Local Rule 104.10 provides:

> Unless otherwise ordered by the Court, a party must provide the disclosures required by Fed. R. Civ. P. 26(a)(2)(B) only as to experts retained or specially employed by a party to provide expert testimony. The disclosures need not be provided as to hybrid fact/expert witnesses such as treating physicians. <u>The party must disclose the existence of any hybrid fact/expert witness</u> pursuant to Fed. R. Civ. P. 26(a)(2)(A), <u>and disclose the subject matter on which the witness is expected to present evidence</u> under Fed. R. Evid. 702, 703, or 705, <u>as well as a summary of the facts and opinions</u> to which the hybrid fact/expert witness is expected to testify, pursuant to Fed. R. Civ. P. 26(a)(2)(C).

(emphasis added). Thus, although the disclosure requirements for hybrid fact/expert witnesses are less extensive than those for retained experts, Donalds still needed to disclose (1) the expected subject matter of Ellerkmann's testimony, and (2) a summary of the facts and opinions to which Ellerkmann was going to testify. See Fed.R.Civ.P. 26(a)(2)(C); Local Rule 104.10. She did neither.

As the Court mentioned in its Memorandum Opinion, Donalds' disclosures were due on July 13, 2018. (Mem. Op. at 16). Donalds' two-sentence designation of Ellerkmann states:

> Dr. Ellerkmann is a board-certified urogynecologist and is one of the Plaintiff's treating physicians. He is expected to provide testimony in this case <u>as it relates to his care and treatment of the Plaintiff.</u>

(Pl.'s Rule 26(a)(2) Disclosures at 2 (emphasis added)). Donalds mentions only care and treatment, not causation. (See id.). And, as Ethicon points out, Donalds presumably "knew

16

how to disclose a causation opinion" because she includes the subject of causation in Luciani's designation. (See Defs.' Opp'n Pl.'s Rule 59(e) Mot. ["Opp'n Recons."] at 7–9, ECF No. 73; Pl.'s Rule 26(a)(2) Disclosures at 2 ("[Luciani] is expected to provide expert testimony . . . as to causation and damages.")). Moreover, Donalds did not disclose any of the facts or opinions that would comprise Ellerkmann's testimony. (See Pl.'s Rule 26(a)(2) Disclosures at 2).

As the Court explained above and in its Memorandum Opinion, Rule 37 provides that "a party that does not provide information required under Rule 26(a) may not later use that information to supply evidence on a motion unless the failure to timely turn it over 'was substantially justified or is harmless.'" (See Mem. Op. at 16); Sherwin-Williams Co., 318 F.3d at 595–96. District courts use the following five factors to assess justification and harmlessness:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Sherwin-Williams Co., 318 F.3d at 597.

Donalds declines to offer any arguments regarding these factors or Rule 37 in her discussion of Ellerkmann's testimony. Regardless of her reason for omitting those arguments, the Court declines to make them on her behalf. See United States v. Davis, 622 F.App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); Wootten v. Virginia, 168

17

F.Supp.3d 890, 895–96 (W.D.Va. 2016) ("[C]ourts widely agree that parties have the burden to present legal arguments in the first instance." (citing cases)). Thus, even if the Court could pull details from the record that may have been helpful in a Rule 37 analysis, it is under no obligation to do so in Donalds' stead.

As the Court has no grounds to overlook Donalds' procedural failures, it need not address Ellerkmann's methodology. (See generally Opp'n Mot. Recons. at 8 (arguing that Ellerkmann's causation opinions are inadmissible as he failed to identify a specific defect in the TVT Abbrevo)). Ellerkmann's opinions were undisclosed and unargued. Reconsideration is inappropriate on these grounds. See Pac. Ins., 148 F.3d at 403.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Donalds' Motion for Reconsideration (ECF No. 71). A separate Order follows.

Entered this 15th day of June, 2022.

                                                    /s/
                                      George L. Russell, III
                                      United States District Judge